IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDIE L. CURBEAM, JR., | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY | : | |
| CORRECTIONAL FACILITY, et al., | : | |
| Defendants. | : | NO. 12-2309 |

**MEMORANDUM**

PRATTER, J.                                                                                           JANUARY 25, 2013

Plaintiff Eddie Curbeam, Jr., has filed a *pro se* complaint against several individuals and entities in which he alleges that he was denied medical care in a Montgomery County prison for a sustained period of time. The various defendants in this action moved to dismiss Mr. Curbeam's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion of Defendants Montgomery County and Julian Algarin, and grants in part and denies in part the motion of Defendants PrimeCare Medical, Inc., Kathryn Hogan, and Debbie McFadden.

I.      Factual Background and Procedural History

   A.      Factual Allegations

On May 9, 2012, Mr. Curbeam filed suit against Defendants Montgomery County Correctional Facility, PrimeCare Medical, Inc., Julian Algarin, Kathryn Hogan, and Debbie McFadden. In his *pro se* complaint, Mr. Curbeam alleges that he injured his back at the Montgomery County Correctional Facility in December 2011 when he slipped and fell in a puddle outside a prison shower. Mr. Curbeam alleges that the prison officials took six to eight days to treat this injury, and that the injury damaged his nerves and thereby caused numbness in his body. However, Mr. Curbeam's symptoms allegedly subsided once the prison began to

1

provide him with treatment. On February 27, 2012, Mr. Curbeam received a follow-up evaluation from Ms. Hogan, a nurse employed by PrimeCare Medical. Ms. Hogan allegedly told him that he should be cleared to work in the prison by March 19, 2012. Mr. Curbeam also appears to allege that the prison's medical staff scheduled a subsequent medical appointment for him for March 19.

While the remaining allegations in Mr. Curbeam's complaint are not a model of clarity, he appears to allege that his scheduled March 19 appointment never occurred. Mr. Curbeam also seems to allege that, had this appointment occurred, he would have been instructed to avoid weightlifting. Mr. Curbeam further alleges that he did in fact lift weights on March 24, 2012, and that he experienced severe discomfort and numbness in his right leg the very next day. According to the complaint, this numbness and pain occurred during lunchtime, at which point Ms. McFadden, a nurse for PrimeCare Medical, came to treat Mr. Curbeam and exacerbated his pain by speaking to him "in an unprofessional tone." The complaint also appears to allege that Ms. McFadden transported Mr. Curbeam to the medical department, forced him to perform leg exercises that caused him increased pain, incorrectly recorded his symptoms, and then abruptly ceased to treat him without providing him any medication. According to Mr. Curbeam, he then had to walk back to his prison cell despite his leg pain.

On March 26, 2012, Mr. Curbeam was evaluated again by Ms. Hogan, who allegedly treated him in a discourteous manner and failed to provide him with medication or schedule a follow-up appointment for him.[1] Following this appointment, Mr. Curbeam continued to suffer from pain and numbness in his right leg and had difficulty walking and standing. However, he alleges that no doctors evaluated his injury and that he frequently had to walk up stairs because

---

[1] Mr. Curbeam also alleges that Ms. Hogan informed him for the first time at this appointment that he should not lift weights.

the prison continued to hold him in an upper-level cell.  Mr. Curbeam also claims that PrimeCare's staff disliked him and failed to respond to his requests for medical treatment.[2]

On April 12, 2012, Mr. Curbeam complained to Nancy McFarland, the President of the Board of Inspectors for the Montgomery County Correctional Facility, about his lack of medical care.  Four days later, Mr. Curbeam was called to the prison's medical unit, where a new nurse asked him about his health issues, made an appointment for him to see a doctor, and prescribed pain relief medication for him.  During this evaluation, Mr. Curbeam allegedly discovered that Ms. Hogan "listed in the computer . . . that I[] did not want . . . medical attention."  Docket No. 4 at 21.  The complaint also appears to allege that Ms. Hogan fabricated this claim about Mr. Curbeam's desire for treatment in an "act of reprisal" against him.  *See id.*

### B. Procedural History

On June 5, 2012, Mr. Curbeam filed a motion for appointment of counsel, which the Court denied without prejudice.  On June 19, 2012, PrimeCare Medical, Ms. Hogan, and Ms. McFadden (the "PrimeCare Defendants") filed a motion to dismiss Mr. Curbeam's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

On July 3, 2012, Mr. Curbeam filed a motion with the Court that addressed several discrete topics and clarified that his complaint included a pendant state law claim for intentional infliction of emotional distress.[3]  *See* Docket No. 19 at 4-5.  Upon reviewing this motion, the Court construed it as a motion for reconsideration of the order denying appointment of counsel, a request for additional time to either support the request for reconsideration or oppose the

---

[2] Mr. Curbeam alleges that he was afraid to take medication prescribed by PrimeCare because he believed its staff was biased against him.  However, he does *not* allege that this fear led him to actually refuse medication offered to him by PrimeCare employees.

[3] After reviewing the briefs submitted in this action, it appears that neither the PrimeCare Defendants (which declined to file a reply brief in support of their motion to dismiss) nor the remaining defendants have sought to dismiss this claim.

PrimeCare Defendants' motion to dismiss, and/or an opposition to that motion to dismiss. The Court then denied the motion in part with respect to the appointment of counsel, granted it in part with respect to giving Mr. Curbeam additional time to respond to the PrimeCare Defendants' motion to dismiss, and noted that it would consider the substance of the motion in adjudicating the motion to dismiss. On July 9, 2012, the Montgomery County Correctional Facility and Mr. Algarin (the "County Defendants") filed a motion to dismiss the claims against them under Rule 12(b)(6). Mr. Curbeam filed a response to both motions on August 29.

## II.      Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others

to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Concomitantly, the Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

Finally, complaints filed by *pro se* litigants like Mr. Curbeam are held to "less stringent standards" than those drafted by lawyers. *See Henry v. Moore*, No. 12-2240, 2012 U.S. App. LEXIS 20624, at *3 (3d Cir. Oct. 3, 2012); *see also Mala v. Crown Bay Marina, Inc.*, No. 10-4710, 2013 U.S. App. LEXIS 375, at *9-10 (3d Cir. Jan. 7, 2013) ("[W]e tend to be flexible

when applying procedural rules to pro se litigants, especially when interpreting their pleadings . . . [and] [w]e are especially likely to be flexible when dealing with imprisoned pro se litigants.") Nonetheless, the Court does have a gatekeeper function to fulfill as to complaints filed by *pro se* litigants. *See id.* at *11.

### III. Discussion

#### A. The County Defendants' Motion to Dismiss

Upon liberally construing Mr. Curbeam's complaint, the Court finds that he has alleged that Montgomery County[4] and Julio Algarin, the Warden of the Montgomery County Correctional Facility, violated the Eighth Amendment by denying him medical care and subjecting him to harsh prison conditions, and that these defendants are also liable for intentional infliction of emotional distress.[5] The Third Circuit Court of Appeals has established that a local government "may only be held liable under [section] 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind [the plaintiff's] injury." *See Jewell v. Ridley Twp.*, No. 11-4231, 2012 U.S. App. LEXIS 19644, at *6 (3d Cir. Sept. 18, 2012) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). Here, no allegation (and, more to the point, no liberal interpretation of any of the allegations) in the complaint suggests that Montgomery County had a policy or custom pertaining to denying prisoners medical care or requiring injured prisoners to traverse stairs. Moreover, Pennsylvania law grants local governments and agencies immunity from claims for intentional infliction of emotional distress.

---

[4] Although the complaint identifies the Montgomery County Correctional Facility as a defendant rather than Montgomery County, the Court will, in light of Mr. Curbeam's *pro se* status, construe his complaint as suing the county itself. *See Gosner v. Abington Police Dep't*, No. 05-1007, 2006 WL 263634, at *3 n.11 (E.D. Pa. Feb. 1, 2006) (following this approach when a *pro se* plaintiff sued the Montgomery County Correctional Facility rather than Montgomery County).

[5] After carefully reviewing the complaint, it appears that Mr. Curbeam is not bringing any claims based on the slip-and-fall accident he suffered in December 2011 or the medical care he received that month.

*See R.B. v. Westmoreland Cnty.*, No. 11-1519, 2012 U.S. Dist. LEXIS 21623, at *20 (W.D. Pa. Feb. 21, 2012). Therefore, the Court dismisses Mr. Curbeam's section 1983 claims against Montgomery County without prejudice and dismisses his intentional infliction of emotional distress claim against Montgomery County *sua sponte* and with prejudice. *See Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6).").

As for Mr. Algarin, the complaint contains no specific allegations regarding his behavior or actions. Mr. Algarin cannot be held liable under section 1983 merely because the conduct alleged in the complaint occurred in the prison where he is the warden, and the Court will thus dismiss all the claims brought against him without prejudice. *See Brooks v. Bledsoe*, No. 12-67, 2012 U.S. Dist. LEXIS 169346, at *12 (M.D. Pa. Nov. 29, 2012) ("[I]t is equally clear that a claim of constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the amended complaint occurred.").

Therefore, the Court dismisses the intentional infliction of emotional distress claim against Montgomery County with prejudice, and dismisses the remaining claims against the County Defendants without prejudice.

### B.    The PrimeCare Defendants' Motion to Dismiss

Mr. Curbeam also appears to assert an Eighth Amendment deliberate indifference claim and an intentional infliction of emotional distress claim against each of the PrimeCare Defendants. With respect to PrimeCare Medical, the Third Circuit Court of Appeals has held that a corporation providing health services at a prison "cannot be held responsible [under section 1983] for the acts of its employees under a theory of respondeat superior or vicarious

liability." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003).  Therefore, Mr. Curbeam must allege "that there was a relevant [PrimeCare Medical] policy or custom, and that the policy caused" him to not receive medical care.  *Id.* at 583-84.  Mr. Curbeam can sufficiently allege such a claim by averring that PrimeCare had an "affirmative policy or custom" that deprived him of medical care, or by alleging that it "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights."  *Id.* at 584; *see also id.* (noting that only widespread practices constitute a custom for purposes of corporate liability under section 1983).

Mr. Curbeam does not allege that any policies or customs of PrimeCare caused a deprivation of his constitutional rights.  Moreover, he does not aver that PrimeCare somehow "turned a blind eye to an obviously inadequate practice."  *Id.*  Instead, Mr. Curbeam appears to allege that Ms. Hogan falsified his medical record by stating that he no longer wanted medical treatment, and that this falsification caused him to receive no medical care for an extended period of time.  Once Mr. Curbeam alerted Ms. McFarland of his alleged lack of treatment, PrimeCare reacted relatively quickly and scheduled an appointment for him within four days.  While these allegations may give rise to a viable claim against Ms. Hogan, they cannot support an inference that PrimeCare ignored an obviously inadequate practice.  Therefore, the Court will dismiss Mr. Curbeam's section 1983 claim against PrimeCare without prejudice.

Mr. Curbeam also alleges that Ms. Hogan and Ms. McFadden violated his Eighth Amendment rights by ignoring his serious medical needs.  In order to withstand a motion to dismiss, Mr. Curbeam must allege that these individuals exhibited "(1) deliberate indifference (2) to [his] serious medical needs."  *Garcia v. PrimeCare Med., Inc.*, No. 08-3589, 2012 U.S. Dist. LEXIS 122064, at *28 (E.D. Pa. Aug. 27, 2012) (citing *Estelle v. Gamble*, 429 U.S. 97, 104

(1976)). Such deliberate indifference may occur if a defendant has "actual knowledge" of an inmate's medical problems. *See id.* at *29-30. Moreover, deliberate indifference "has been found where there was objective evidence that a plaintiff had a serious need for medical care and prison officials ignored that evidence . . . and where necessary medical treatment is delayed for non-medical reasons." *See id.* at *30 (internal quotations omitted) (citing *Nicini v. Morra*, 212 F.3d 798, 815 n.14 (3d Cir. 2000) and *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Here, after drawing all reasonable inferences from the allegations in the complaint in favor of Mr. Curbeam, and noting his status as a *pro se* litigant, the Court finds that he alleges that Ms. Hogan personally disliked him and falsified his chart to the effect that he no longer wanted medical care, thereby causing him to receive no medical care for a period of 21 days. As for Ms. McFadden, the complaint alleges that she also disliked Mr. Curbeam, that she evaluated his condition by asking him to perform leg exercises which obviously caused him "excruciating pain," and that she nonetheless failed to provide him with any medication or medical instructions. In light of these allegations, the Court finds that Mr. Curbeam has sufficiently alleged that Ms. Hogan and Ms. McFadden acted with deliberate indifference to his rights and well-being.[6] *See Monmouth Cnty.*, 834 F.2d at 346-47 (deliberate indifference occurs if a defendant intentionally refuses to provide necessary medical care or delays such care for a non-medical reason).

---

[6] The PrimeCare Defendants have not argued that the Court should dismiss Mr. Curbeam's complaint because his alleged medical problems were insufficiently serious.

Finally, the Court notes that none of the PrimeCare Defendants have moved to dismiss Mr. Curbeam's claims for intentional infliction of emotional distress, and declines to dismiss these claims *sua sponte*.[7]

## IV. Conclusion

For the foregoing reasons, the Court dismisses the intentional infliction of emotional distress claim against Montgomery County with prejudice, dismisses the remaining claims against the County Defendants and the deliberate indifference claim against PrimeCare Medical without prejudice, and denies the motion to dismiss the other claims against the PrimeCare Defendants. Therefore, Mr. Curbeam may pursue claims against the following parties based on the allegations in his current complaint:

- PrimeCare Medical (with respect to intentional infliction of emotional distress).

- Ms. Hogan (with respect to the section 1983 deliberate indifference claim and intentional infliction of emotional distress)

- Ms. McFadden (with respect to the section 1983 deliberate indifference claim and intentional infliction of emotional distress).

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[7] Mr. Curbeam's complaint alleges that the conduct of PrimeCare's employees caused him to suffer physical harm and emotional distress. Moreover, after the PrimeCare Defendants filed their motion to dismiss, Mr. Curbeam filed his July 3, 2012 motion, which confirmed that his complaint included a claim for intentional infliction of emotional distress. *See* Docket No. 19 at 4-5. The Court then invited the PrimeCare Defendants to file a reply in support of their motion to dismiss. *See* Docket No. 23 at 1-2. The PrimeCare Defendants declined to submit a reply, and have thus failed to address Mr. Curbeam's claim for intentional infliction of emotional distress.