# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDIE L. CURBEAM, JR., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PRIMECARE MEDICAL, INC., et al., | : | No. 12-2309 |
| Defendants. | : | |

## **MEMORANDUM**

PRATTER, J.                                                                                                   NOVEMBER 6, 2013

PrimeCare Medical, Inc., Kathryn Hogan, and Debbie McFadden move for summary judgment (Docket Nos. 32-34) and ask the Court to dismiss Eddie L. Curbeam, Jr.'s suit for intentional infliction of emotional distress and their alleged violation of his Eighth Amendment right to medical treatment. Having canvassed the background of this case once before, the Court writes primarily for the parties. *See Curbeam v. Montgomery Cnty. Corr. Facility*, No. 12-2309, 2013 WL 315719 (E.D. Pa. Jan. 28, 2013). For the reasons that follow, the Court will grant the Defendants' Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Curbeam, a pro se plaintiff incarcerated at Montgomery County Correctional Facility, sued several individuals and entities for what he alleges was their sustained denial of the medical care he required. Following review of the Defendants' Motion to Dismiss, the Court dismissed all claims and defendants except for claims for (1) intentional infliction of emotional distress against PrimeCare Medical; (2) intentional infliction of emotional distress and 42 U.S.C. § 1983 deliberate indifference against Ms. Hogan; and (3) intentional infliction of emotional distress and § 1983 deliberate indifference against Ms. McFadden.

1

Mr. Curbeam subsequently filed an Amended Complaint (Docket No. 28) that, though clearer than his initial Complaint (Docket No. 4), is nonetheless difficult to place into context because of the information that, though present in the initial Complaint, was omitted in the second effort. The Amended Complaint focuses only on the three Defendants against whom Mr. Curbeam's claims survived the Motion to Dismiss: PrimeCare Medical, Ms. Hogan, and Ms. McFadden.

Mr. Curbeam, who alleges that he was housed on the upper floor of the Montgomery County Correctional Facility, makes what seem to be two operative allegations against the Defendants. First, he alleges that on March 24, 2012, Ms. McFadden entered his cell "as a routine procedure when an inmate is injured." Am. Compl. ¶ 9 (hereinafter "AC"). He does not specify what injury this was; presumably, it was the slip-and-fall injury referred to in his original Complaint. In any case, he alleges that "[u]pon [Ms. McFadden's] arrival she realized who it was and began to express unconcern and unprofessional like behaviors (VERBAL ABUSE)." AC ¶ 9. He avers that he was then "made to walk on my own down the stairs to the wheel chair" and, once at the medical department, Nurse McFadden protracted his "intentional discomfort" by telling him "to do obvious pain causing motions," AC ¶ 10, and remarking that "you['re] the one who said he want[s] nothing to do with us," at which point he "began to [experience] more discomfort and more pain," AC ¶ 12. Ms. McFadden then allegedly dismissed Mr. Curbeam "without [affording him] any pain relief [a]s a result of her not liking [his] answer to a question." AC ¶ 13.

Second, Mr. Curbeam alleges that at an earlier appointment with Ms. Hogan, "she entered maliciously that [he] had declined to be treated medically by any of the staff," AC ¶ 14, such that "it stated in the computer that [he] had willingly denied all medical care," AC ¶ 16. Mr.

Curbeam alleges that this computer entry "was fabricated" by Ms. Hogan. As a result of Ms. Hogan's and Ms. McFadden's actions, Mr. Curbeam alleges, he was denied an appointment for "21 days of pain[,] suffering and verbal abuses." AC ¶ 15.

Mr. Curbeam argues that Ms. McFadden and Ms. Hogan were deliberately indifferent, in violation of the Eighth Amendment, in their failure to treat him. He also alleges that they "caused [him] pain, suffering and emotional stress supported by 10 eyewitness signatures and statements," as well as intentional infliction of emotional distress. AC ¶ 21. Specifically, Mr. Curbeam alleges that Ms. McFadden's actions were in retaliation, although he does not specify for what the retaliation was intended. He demands $15,000 in compensatory damages and $5000 in punitive damages.

\*　　\*　　\*

The evidence of record does not support Mr. Curbeam's allegations. Mr. Curbeam served no discovery. From Defendants' exhibits, it also appears that Mr. Curbeam was not deposed. Further, in response to the Defendants' Motion for Summary Judgment, Mr. Curbeam submitted only a two-page Response in which he stated that "after viewing statements and all facts, I still feel the need to pursue this case" because, he argues, the Defendants admitted "poor bedside manner" and "the medical records show that there was a medical record existing" (presumably, that he had refused treatment), along with "harmful [intention]," (Docket No. 36). He further contends that he has "submitted signed declarations to the Court" (*see* Docket Nos. 12-14) and that he has witnesses willing to testify to the "gap in medication reception." Resp. at 1. He also argues that "if need be I can submit medical proof," *id.* at 2, but he has failed to do so.

Although Mr. Curbeam is a pro se plaintiff and, in his words, "as a pro se plaintiff there are some things I do not understand and [am] incapable of submitting in the fashion required,"

3

*id.* at 1, Mr. Curbeam must nevertheless meet his burden at the summary judgment stage—i.e., of pointing to evidence to rebut the moving Defendants' evidence of the absence of a genuine issue of material fact. This he has failed to do.

Instead, the record evidence establishes the following facts concerning, first, Ms. Hogan's allegedly fabricated entry in Mr. Curbeam's medical record that Mr. Curbeam had refused medical care and, second, Ms. McFadden's alleged abusive, deliberately indifferent treatment of Mr. Curbeam, these alleged events being the linchpins of Mr. Curbeam's claims.

### A. MS. HOGAN'S ALLEGED FALSE RECORDS ENTRY

First, with regard to Ms. Hogan's allegedly false entry into Mr. Curbeam's file that he had refused treatment, the record evidence shows:

- On a February 1, 2012 sick call, Dr. Margaret Carrillo noted that while Mr. Curbeam had "intermittent numbness and tingling of R ring and little fingers of R hand, extending up into his forearm, present for several months," this "[n]umbness does not incapacitate patient and he requests no analgesics for symptoms." Instead, Mr. Curbeam "otherwise feels well and would like to work." Dr. Carrillo advised Mr. Curbeam that "he may lift weights but to avoid heavy weight lifting in gym and repeated pushups." (Ex. A at 38 (Docket No. 34-2));
- On a February 5, 2012 request form, Mr. Curbeam, "for the purpose of growth," requested work clearance, as he had been "told by the PA that [he] would possibly be cleared for work." The request was denied because "you continue to complain of leg pain." (Ex. A at 74);
- Mr. Curbeam renewed his request for work clearance on February 18, 2012. He stated, "If I may be cleared for work duties please. If need be I will submit[] to a follow up check up. I am no longer tak[ing] any meds as of the two weeks or more and I am working out regularly with good results. Have resumed normal functions for some time." (Ex. A at 75);
- At a February 20, 2012 appointment, Nurse Ann Defrangesco noted that Mr. Curbeam "has stopped taking medication and states that he has returned to 'normal function'" (Ex. A at 22);

4

- On February 22, 2012, Mr. Curbeam submitted a grievance on a request form "in reff. to the Decission [sic] of no work clearance for 45 days?" He argued that "[i]f the prison staff is making medical decisions about you based on non-medical factors, you may be able to claim deliberate indifference. Prisons should not decide what medical treatment to give, or one recieves [sic], based on factors like lack off [sic] staff or interpreters, the prison's budgetary restrictions." Mr. Curbeam then explained that he had "had no follow up concerning the previous injury to determin[e] a 45 day delay in activity. (8 Amdt.)" (Ex. A at 76);
- The response was that "you claimed multiple orthopedic complaints on admission—you reported nerve problems in your right arm—numbness reported on 02/01/12" and that "you were on significant medications for treatment of these problems recently—patients who require low bunks are usually not cleared for task." (Ex. A. at 76);
- On February 27, 2012, Mr. Curbeam met with Dr. Carrillo, and Ms. Hogan wrote, "patient seen by MD, [Dr. Carrillo], and informed that he no longer needs to be on CCC – pain. Pain resolved beginning of february [sic] 2012." (Ex. A at 23);
- In another sick call report on February 27, 2012, Ms. Hogan, causing the first incident that Mr. Curbeam complains of, wrote, "Patient does not want to be seen. He has reiterated this to Dr. Car[r]illo, and myself. We have documented in the chart his wishes. He is not on medications. There is no further need for follow up." (Ex. A at 38);
- On March 9, 2012, Mr. Curbeam submitted another request form in which he asserted, "I can assure as the findings of Dr. Currilo [sic] are correct. I am %100 able body sir [sic]. I go to the [weight] room regularly and take part in all activities. Yard (handball, jogging, push ups etc.) Sir what are the extra 10 days for. Please let me work. I have 16 months to do sir, It's so hard to just sitting [sic] here. Please get me my final release. (Both doctors said I'm fine.) Since Feb. 1." (Ex. A. at 78);
- On March 19, 2012, Mr. Curbeam submitted another request form on which he stated, "My 45 days are up (+) as of March 16th. I am supposed to have been scheduled for my march 19th follow up. Told to me by Dr. Carrillo please check computer." (Ex. A at 80);
- On March 25, 2012, Ms. McFadden prescribed two tabs of 200 mg ibuprofen for pain that began after Mr. Curbeam was in the weight room on March 24, 2012; she noted that the "[l]ikely cause of symptoms" was "[imp]roper [b]ody mechanics." (Ex. A at 56);

5

- On March 26, 2012, there is another brief note, entered by Ms. Hogan, from one of Mr. Curbeam's appointments, describing "numbness/pain down right side of buttock." (Ex. A at 24);
- On another form on March 26, 2012, Ms. Hogan noted that "lifting 425 lbs, and on the 9th try, [Mr. Curbeam] hurt his back, and he is inquiring about what exactly is wrong," but that she could not "diagnose without an mri if he is asking about a neurological point of origin." Ms. Hogan applied moist heat therapy and ordered Mr. Curbeam to be restricted from using the gym and lifting weights and reminded him to read Dr. Carrillo's February 1, 2012 advisement about not lifting weights. She also "advised him to get an mri and see a specialist when he leaves." (Ex. A at 29; *see also* Ex. A at 54 (gym restriction));
- Ms. Hogan further noted on the March 26, 2012 visit that she was "[n]ot quite sure if [Mr. Curbeam] understood that to diagnose with a specific injury related to his back . . . he may need to [follow up] with a specialist. He denies ever having an issue on the outside. He also continues to use the gym and lift 425 lbs." (Ex. A at 29);
- On April 3, 2012, Mr. Curbeam submitted another request form explaining that he was "seeking help concerning my medical (current) issue" in the "belie[f that] I am in a state that requires a walking divice [sic] to help me maintain mobility. It is excruating pain to go any distance. I sleep on the top [floor]" and having to "go up and down" stairs "cause[s] me major discomfort. The inside of my leg is still numb. Between and above my tail bone are becoming more and more sore." (Ex. A at 81);
- On April 9, 2012, Mr. Curbeam submitted another request in which he stated, "On two different occassions [sic] I sub[mitted] gr[ievances] concerning some med issues. Mostly unjust treatment." He added that he had "not recieved [sic] any copies and or responses." (Ex. A. at 82); and
- Mr. Curbeam continued to be seen by the medical department throughout April 2012 and beyond (*see, e.g.*, Ex. A at 24-41).

### B. MS. McFADDEN'S ALLEGED DELIBERATE INDIFFERENCE

Second, with regard to Ms. Hogan's allegedly false entry into Mr. Curbeam's file that he had refused treatment, in addition to the evidence laid out above, the record also establishes that:

- As noted above, Mr. Curbeam met on March 26, 2012, with Ms. Hogan to address his complaints of numbness. She reiterated Dr. Carrillo's February 1, 2012

instruction to stop lifting heavy weights, and told him that he should get an MRI and follow up with a specialist when he left. (Ex. A at 39);

- On March 25, 2012, Ms. McFadden prescribed two tabs of 200 mg ibuprofen for Mr. Curbeam. Dr. Carrillo approved this prescription two days later. (Ex. A at 9-10);
- Mr. Curbeam received this medicine on March 26, 2012, but did not return again to receive medicine until April 16, 2012. (Ex. A at 14-15).

The Declarations of fellow inmates (Docket Nos. 12-14) are arguably redundant and conclusory, but they establish that:

- The inmate across the hall saw Mr. Curbeam unable to walk on his own and on March 25, 2012, saw emergency teams and officers take Mr. Curbeam out in a wheelchair; further, this inmate never saw "him get any medication for pain" or see "anyone inquire about his health or wellbeing." (Chimbinja Decl., Docket No. 12);
- Mr. Curbeam's cellmate stated that Mr. Curbeam received no help getting down the stairs on March 25, 2012, but rather "used his arms to swing down the stairs," and then did not have medication or a check-up "for over 20 days." (Lowery Decl., Docket No. 12; *see also* Poust Decl., Docket No. 12);
- Mr. Curbeam's cellmate opined that during the March 25, 2012 incident, one nurse "was nice but the other wisperd [sic] somehting [sic] to the other." (Lowery Decl., Docket No. 12); and
- Another inmate says that Mr. Curbeam told him "that [Ms. McFadden] had walked out of the office on him because of his previous request attempts." (Beard Decl., Docket No. 13).

### III. SUMMARY JUDGMENT STANDARD

Upon motion of a party, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment has the initial burden of supporting its motion by reference to admissible evidence showing the absence of a genuine dispute of a material fact or showing that there is insufficient admissible evidence to support the fact. *Id.* 56(c). Once this burden has been met, "the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Summary judgment should be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir.1988). A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The court must not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Of course, the court may grant summary judgment if the plaintiff's version of the facts, as a matter of law, does not entitle her to relief: "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## III. DISCUSSION

The Defendants contend that Mr. Curbeam has failed to raise a genuine issue of material fact with regard to his allegations of deliberately indifferent treatment at the hands of Ms. Hogan or Ms. McFadden. The Court agrees. The only evidence of record, submitted as Exhibit A to the Defendants' Motion for Summary Judgment and in the form of Mr. Curbeam's fellow inmates' Declarations, fails to support Mr. Curbeam's allegations.

To prevail on a claim of Eighth Amendment deliberate indifference, an inmate-plaintiff must show that prison officials were (1) deliberately indifferent to (2) the inmate's serious medical needs. *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). The Third Circuit Court of Appeals has explained that "deliberate indifference is manifest" when "prison officials deny reasonable requests for medical treatment." *Id.* Deliberate indifference is also evident when prison officials delay medical treatment for nonmedical reasons or when they choose to pursue an easier but less effective means of treatment. *Id.* at 346-47.

It is unnecessary to flesh out the standard further here, however, because the evidence of record does not support Mr. Curbeam's alleged version of events, even when all facts and reasonable inferences are construed in his favor. Even if his medical needs were serious—an assumption, for sake of argument—he cannot show that either Ms. Hogan or Ms. McFadden was deliberately indifferent.

First, the record evidence laid out above shows that Mr. Curbeam made repeated requests to be cleared for work and noted that he had normal functions and was no longer taking medication. Within a week before Ms. Hogan's February 27, 2012 entry that Mr. Curbeam's pain

had resolved and that he no longer needed medication or a follow-up appointment, Mr. Curbeam, on February 22, had complained that prison officials were making decisions based on nonmedical factors—presumably a reference to their refusal to clear him for work. And two days before that he had an appointment with Ms. Defrangesco, at which time Ms. Defrangesco noted that he had stopped taking medication and returned to normal function. And again, only two days before *that*, Mr. Curbeam asked for work clearance because he was no longer taking medication and had returned to normal function. Based on this evidence, the Court cannot reasonably draw the inference that Ms. Hogan intentionally or even recklessly fabricated the February 27, 2012 entry in Mr. Curbeam's records. In sum, the evidence does not support Mr. Curbeam's claim that "Defendant Hogan . . . caused plaintiff Curbeam physical pain, suffering and emotional distress [b]y altering recommendations that led to 21 days of non medical [sic] treatments." AC ¶ 23.

Second, although there is less evidence regarding Ms. McFadden's alleged treatment of Mr. Curbeam on March 24, 2012, what evidence there is fails to establish a genuine issue of material fact. For one, contrary to Mr. Curbeam's assertion that Ms. McFadden made him walk without help is Mr. Curbeam's statement in his own initial Complaint that "I was escorted by wheelchair to the medical department." Incident at 2, Compl. The fact that he may have had to walk down the stairs to the wheelchair, as Mr. Curbeam's Declarations suggest, does not establish deliberate indifference on the part of the Defendants—how can a wheelchair safely go down stairs? And the fact that Mr. Curbeam may have swung himself down the stairs, as one of his Declarations states, does not reasonably suggest that the Defendants were deliberately indifferent to his medical needs.

Further, contrary to his claim that Ms. McFadden "dismiss[ed] me without pain relief," the evidence of record shows that Ms. McFadden prescribed ibuprofen and Dr. Carrillo approved

this prescription two days later. Although some of Mr. Curbeam's fellow inmates, in their Declarations, state that Mr. Curbeam did not receive medication, they were not present at his appointment (and thus lack personal knowledge), and their statements do not rebut the Defendants' evidence that Mr. Curbeam was prescribed ibuprofen, even if he failed to collect or take it. Indeed, except for collecting this medicine on March 26, 2012, Mr. Curbeam, according to the records, did not return again to collect his ibuprofen. Moreover, contrary to Mr. Curbeam's suggestion that the pain he experienced was caused by the failure to schedule an appointment by March 19, 2012, and that any further injury would have been prevented had he been instructed not to lift heavy weights, the record establishes that he was told at least twice, first by Dr. Carrillo on February 1, 2012, and then again by Ms. Hogan on February 27, 2012, not to lift heavy weights. Mr. Curbeam has also presented no evidence to establish either that (a) the exercises Ms. McFadden allegedly made him do were for any purpose other than diagnosis or education, or (b) he was dismissed to walk back, in severe pain, to his cell, as opposed to getting up and leaving before being dismissed—or even that such a dismissal would have been deliberately indifferent. Mr. Curbeam cannot rely on the declaration of another inmate who simply repeats what Mr. Curbeam told him (i.e., that Ms. McFadden walked out of the office on him on March 25, 2012). Finally, although Mr. Curbeam does not actually claim in his Amended Complaint that Ms. McFadden's handling of the situation caused him damages past the incident itself (i.e., he does not claim that her handling of the incident caused him pain and suffering in the following weeks), the record evidence establishes that Mr. Curbeam was seen throughout April 2012 and beyond, notwithstanding his fellow inmates' conclusory Declarations that he remained "without medication or check up" for an unspecified period of time (*see, e.g.*, Lowery Decl., Docket No. 12).

Although Mr. Curbeam is a pro se inmate and therefore entitled to some leniency with regard to certain aspects of litigation, he nonetheless has a burden at the summary judgment stage of producing record evidence to support his case by creating a genuine issue of material fact as to all elements of his claims. He has failed to do so with regard to his Eighth Amendment deliberate indifference claims—the only federal claims remaining in this case, *see Curbeam*, 2013 WL 315719, at *5-6. The Court will decline to exercise supplemental jurisdiction over his dubious claims of intentional infliction of emotional distress.

\* \* \*

Despite granting the Defendants' Motion for Summary Judgment, the Court notes in closing that it does not excuse (much less endorse) unprofessional and demeaning treatment—whether called poor bedside manner or otherwise displayed through side comments or visible frustration or dismissiveness with patients—by healthcare professionals. The decision today establishes only that Mr. Curbeam's treatment did not rise to the level of Eighth Amendment deliberate indifference, and that is all that a federal court, in this case, need resolve. But whether Mr. Curbeam was inconsistent in reporting his medical symptoms or was otherwise reticent, to the extent that his Complaint, his Amended Complaint, and his fellow inmates' Declarations suggest that he was treated unprofessionally, he may still be vindicated if he pursues his claims in a different forum.

## CONCLUSION

For the foregoing reasons, the Court will grant the Defendants' Motion for Summary Judgment and dismiss this case. An Order consistent with this Memorandum follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge